<u>**VIA ELECTRONIC FILING**</u>

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom F, 15th Floor
San Francisco, California 94102

Re:     *Jeremy Bauman, et al. v. V Theater Group, LLC, et al.*, Case No. 3:15-mc-80102-JSC

Dear Judge Corley:

Counsel for Plaintiffs and non-party Twilio, Inc. (collectively, the "Parties") submit this joint
letter brief pursuant to the Court's Order of April 17, 2015, Dkt. #9. As permitted by the Court's
Order, the Parties agreed to extend briefing deadlines by one week.

**PLAINTIFFS' BRIEF OF APRIL 29, 2015**

Twilio obstructs the litigation of Plaintiffs' class action claims by refusing to produce highly
relevant documents that (a) Plaintiffs have subpoenaed for production and (b) Twilio agreed to
produce. Plaintiffs respectfully ask for the Court's assistance to overcome Twilio's obstructions.

**A.      Background to the Discovery Dispute**

In a pair of consolidated federal class action lawsuits pending in Nevada, Plaintiffs allege that
Defendants violated the Telephone Consumer Protection Act ("TCPA") by sending text
messages to consumers. *See* Dkt. #2-1; Dkt. #2-2. The TCPA states, "It shall be unlawful for any
person … to make any call … using any automatic telephone dialing system … to any telephone
number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii); *cf. Thomas
v. Taco Bell Corp.*, 582 F. App'x 678, 678 (9th Cir. 2014). "A text message is a call under the
TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

Plaintiffs learned that Twilio helped facilitate Defendants' transmissions of text messages to the
class of consumers who Plaintiffs seek to represent. *See* Dkt. #2 ¶¶ 5-6; Dkt. 2-3 at 3; *cf.* Dkt. 6-
1, p. 5 ("Twilio facilitated the transmission of text messages …."). Plaintiffs also learned that
Twilio—not Defendants—has possession, custody, and control of all records pertaining to the
transmission of the text messages at issue in Plaintiffs' two class action lawsuits. *See* Dkt. #2 ¶ 6;
*cf.* Dkt. 6-1, p. 6 ("**The defendants did not maintain copies or records of any transmissions
to Twilio nor did defendants maintain copies of any particular text message. Twilio does
maintain certain information regarding the defendants' account; however, this information
is gathered and electronically maintained by Twilio, not the defendants.**") (emphasis in
original). Twilio's own website markets how these transmission records are extensive, including
information such as acknowledgement of text message receipt by cellular telephone carriers in
the United States at a rate of 99%. *See Affidavit of Albert H. Kirby* ("*Aff. Kirby*"), ¶ 10, Ex. 7.

In this context, Plaintiffs propounded a subpoena upon Twilio which asks for seven categories of
documents related to the text message transmissions at issue in Plaintiffs' two complaints. *See*
Dkt. #2-4. This subpoena was served upon Twilio at its corporate headquarters on February 12,
2015. *See* Dkt. #2-5; *cf.* Dkt. #2 ¶ 9. Twilio's Customer Operations Manager states that she did

The Honorable Jacqueline Scott Corley
Page 2

not become aware of the subpoena until March 31, 2015. *See* Dkt. #4-1 ¶¶ 1-2; *cf.* Dkt. #1 at 6. But at the Order to Show Cause hearing, Twilio's counsel conceded that Twilio was in actual receipt of the subpoena. Accordingly, the Court instructed the Parties to meet and confer regarding Twilio's compliance with the subpoena. *See* Dkt. #9 at 1.

Immediately after the hearing on Thursday, April 16, 2015, the Parties' counsel reached a proposed compromise as to what documents should be produced in lieu of further motion practice. The Parties' counsel discussed narrowing the requests to "1) all transmittal records from Defendants' accounts, 2) any STOP messages or reply communications from message recipients, 3) a copy of Defendants' customer profiles (including account information, services provided, *et cetera*), 4) billing records – reflecting Twilio's charges." *See Aff. Kirby*, ¶ 3, Ex. 2; *cf. id.*, ¶ 2, Ex. 1 at p. 2. On Monday, April 20, 2015, Twilio assented to the compromise. *See id.*

In an email sent on Tuesday, April 21, 2015, Twilio's counsel served 50 pages of PDF documents and 2 Excel files with data responsive to Plaintiffs' subpoena. *See Aff Kirby*, ¶¶ 4-5, Ex. 3 at p. 10. However, a quick review of the Excel files made clear that not "all transmission records" had been produced. *See id.*, ¶ 5. And within fifteen minutes of the email transmittal, Plaintiff Bauman's counsel responded seeking the additional, responsive discovery. *See id.*, Ex. 3 at pp. 9-10. Upon further review, additional deficiencies became very apparent. *E.g.*, *see id.*, Ex. 3 at pp. 2-3. But attempts to meet and confer ended after Twilio's counsel advised, "Twilio intends to seek its attorneys' fees and costs associated with any additional meet and confer efforts." *See id.*, Ex. 3 at p. 1. Plaintiffs believe that further meeting and conferring would be futile. Therefore, Plaintiffs respectfully request the assistance of the Court to enforce Twilio's obligations to comply with the subpoena.

**B.      Twilio Refuses to Produce "All" Transmittal Records Despite its Promise to Do So**

Plaintiffs made quite clear during the meet and confer process that they considered all data associated with a text message transmission to be a transmittal record. *See id.*, ¶ 6. *E.g.*, "transmittal records" necessarily include the contents of the text message transmitted, acknowledgments from cellular telephone carriers of receipt of a transmittal, the caller and recipient telephone numbers, the times and dates of the transmittals, and any other data collected with regard to a transmittal. *Id.* And there is no genuine dispute that Twilio agreed to produce "all" records of transmittals made from Defendants' Twilio accounts. *See*, *e.g.*, *Aff. Kirby*, Ex. 1, p. 2. "All" simply means everything. But Twilio refuses to produce "all" transmittal records.

Instead of "all" transmittal records, Twilio produced only records of each calling telephone number, each called telephone number, and the date and time of each transmittal. *See Aff. Kirby*, ¶ 9, Ex. 6. Twilio does not dispute that additional transmittal records exist. *See id.*, Ex. 3 at pp. 1-2. Rather, Twilio argues that (a) the additional records are not available in a reasonable time, (b) the records are not relevant, and (c) Twilio would incur expense to comply. *See id.* Even ignoring that Twilio agreed to produce "all transmittal records", these arguments have no merit. The only evidence presented to date suggests that "all" transmittal records are easily available to Twilio. For example, Twilio touts the easy access of transmission receipt acknowledgments as a reason why businesses should send their text messages through Twilio's infrastructure. *See Aff. Kirby*, Ex. 7. Other records produced by Twilio substantiate that it collects records identifying which text messages were sent to cellular telephone carriers. *See id.*, ¶ 7, Ex. 4 at p. TWILIO40. And within 24 hours of agreeing to do so, Twilio demonstrated that it had easy access to the

The Honorable Jacqueline Scott Corley
Page 3

contents of transmittals by producing a set of reply communications that included the contents of
text messages received. *See Aff. Kirby*, ¶ 8, Ex. 5; *also see id.*, Ex. 1 at p. 2; *cf. id.*, Ex. 3 at p. 10.
Thus, the only apparent delay or expense involved in Twilio providing "all" transmittal records
is the delay and expense of Twilio having to redo what it agreed to do in the first place.

Moreover, the transmittal records which Twilio refuses to produce are highly relevant to
certifying and ultimately adjudicating the claims being prosecuted against the Defendants. For
example, the records of the contents of the text messages transmitted will help confirm the
numerosity of the class by demonstrating how many of the text messages were part of the
telemarketing scheme that resulted in Plaintiffs receiving unsolicited commercial text messages.
This is relevant because, "[b]efore a class can be certified, a court must determine that it is 'so
numerous that joinder of all members is impracticable.'" *Agne v. Papa John's Int'l, Inc.*, 286
F.R.D. 559, 566-67 (W.D. Wash. 2012), *citing* Fed. R.Civ. P. 23(a)(1). Also, Plaintiffs and
Defendants will be mediating the case soon. *See* Dkt. #6-2 at 2:27-28. Being able to quantify the
size of the class and the damages at issue is necessary to resolve the class's damage claims.

Additionally, the data which Twilio refuses to produce should help Plaintiffs substantiate the
manageability of the class's claims as required by Rule 23(b)(3). TCPA defendants commonly
oppose class certification by arguing that it might be hard to tell who received a text message on
their cellular telephones. *See, e.g., Agne*, 286 F.R.D. at 570 (noting that a defendant argued that
questions of who actually received text messages overwhelm common issues). But Twilio has in
hand transmittal records which are acknowledgments from cellular telephone carriers that text
messages were received. Records such as these can only help demonstrate to the Nevada District
Court how easy it can be to adjudicate the class's claims as part of a certified class action.

Twilio has no good cause to refuse to produce "all" transmittal records. Plaintiffs served a lawful
subpoena requesting these records. Twilio subsequently promised to produce them. Therefore,
Plaintiffs respectfully request that Twilio be ordered to produce "all" transmittal records.

**C.    Twilio Refuses to Produce All of Defendants' Account Profile Information**

Twilio agreed to produce Defendants' customer profiles, including account information, services
provided, *et cetera*. *See, e.g., Aff. Kirby*, Ex. 1, p. 2. However, documents produced by Twilio
illustrate that its production is incomplete. Twilio produced a number of documents whose
headers state that they are Accounting History details. *See id.*, ¶ 7, Ex. 4. These headers indicate
that these documents are just a subset of documents that are part of Twilio's V Theater Box
Office's Account. *See id.* Yet, Twilio produced no other account documents. *See id.*, ¶ 7.
Plaintiffs subpoenaed all of those documents, and Twilio agreed to produce them. Twilio offers
no genuine reason why it cannot produce all account documents. Knowing the full scope and
context of Defendants' business with Twilio is highly relevant to Plaintiffs' case. Therefore,
Plaintiffs respectfully asks the Court to compel Twilio's full production of account documents.

**D.    Plaintiffs Respectfully Ask the Court to Help Them Obtain Discovery from Twilio**

Twilio "must show that [it] took every reasonable step to comply with the subpoena and to
articulate reasons why compliance was not possible." *See Martinez v. City of Pittsburg*, No.
C 11-01017 SBA LB, 2012 WL 699462, at *3 (N.D. Cal. Mar. 1, 2012) (citation omitted).
And, "[a] court may consider a history of noncompliance and a failure to comply despite the

The Honorable Jacqueline Scott Corley
Page 4

pendency of a contempt motion." *Id.* (citation omitted). Despite these standards, Twilio continues to obstruct Plaintiffs' access to necessary and reasonable discovery.

"Discovery—a process intended to facilitate the free flow of information between parties—is now too often mired in obstructionism. Today's 'litigators' are quick to dispute discovery requests, slow to produce information, and all-too-eager to object at every stage of the process." *Sec. Nat. Bank of Sioux City, Iowa v. Abbott Labs.*, 299 F.R.D. 595, 596 (N.D. Iowa 2014). "This conduct fuels the astronomically costly litigation industry at the expense of 'the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.*, at 597, *quoting* Fed.R.Civ.P. 1. Though a non-party in the present case, Twilio lends truth to these observations by refusing to produce highly relevant documents that (a) Plaintiffs have subpoenaed for production and (b) Twilio agreed to produce. Plaintiffs respectfully ask for the Court's assistance to obtain discovery materials which Plaintiffs properly subpoenaed, Twilio possesses, and Plaintiffs need.

**TWILIO'S RESPONSE OF MAY 4, 2015**

Twilio is not a party to this dispute. As such, Twilio has no vested interest in impeding the litigation or prejudicing either party. After receiving plaintiff's subpoena in late March, Twilio worked assiduously to respond to plaintiff's broad requests, and did so promptly given the urgency expressed by plaintiff about their discovery needs. To avoid further legal expense associated with motion practice, Twilio directed its engineers *to write code* to access information that is not used or accessed in the ordinary course of business. Twilio produced all of the information it was able to create through this process and provided the information within business days of the court-directed meet and confer among counsel. Twilio produced information responsive to all of the categories of narrowed requests and complied fully with its commitment to provide information. *See generally* Affidavit of Emily Emery in Opposition to Plaintiff's Motion to Compel ("Emery Aff.") at ¶¶ 1-18. Despite this, plaintiff continues to press for additional information. Twilio offers the following points for consideration:

1) Twilio has produced the information that it could to respond to the narrowed requests. Twilio maintains that it has fully complied with its commitment to produce the readily available information in each of the four categories per its agreement. Emery Aff. at ¶ 11. Twilio did not commit to produce additional information. In the contempt application, plaintiff represented that it wanted information about the number of messages transmitted, the numbers of the intended recipients and the services defendants' obtained from Twilio. Twilio agreed to provide that information and did so. Twilio never intended to produce every datum of information about defendants' accounts because it could never deliver. Emery Aff. at ¶ 14.

2) Plaintiffs seek to require Twilio to write software queries to access information that Twilio does not use in the ordinary course of its business. That is well beyond the scope of responsive required by the federal rules. *See Robinson v. Adams*, No. 1:08-CV-01380-AWI, 2011 WL 2118753, at *9-15 (E.D. Cal. May 27, 2011) (ruling that defendants do not have to create responsive documents); *Zysman v. Zanett Inc.*, No. C-13-02813 YGR (DMR), 2014 WL 1320805, at *3 (N.D. Cal. Mar. 31, 2014) (denying plaintiff's motion to compel defendants to produce documents in a manner that they were not kept in the usual course of business) ("Under Rule 34, Defendants are only required to produce documents as they are

The Honorable Jacqueline Scott Corley
Page 5

kept in the ordinary course of business, not to alter the documents or explain information
contained therein.").

3) The burden plaintiff seeks to impose is particularly oppressive for a non-party. *See Bickoff
v. Wells Fargo Bank, N.A.,* No. 14-CV-1065-BEN WVG, 2015 WL 1256360, at *2 (S.D.
Cal. Mar. 18, 2015) (granting plaintiff's ex parte application for an order to quash the
deposition subpoena as to nonparties) ("Pursuant to Rule 45, a party or attorney responsible
for issuing and serving a subpoena must take reasonable steps to avoid imposing undue
burden or expense on a person subject to the subpoena.").

4) Twilio's responses were complete.  Twilio did not redact the information provided.  In the
past, Twilio has produced a broader data set of information that was limited to a limited
volume of data.  Plaintiff seeks a huge amount, involving hundreds of thousands of
transmissions without narrow time parameters.  Twilio does not have the manpower or
bandwidth to process that request.  Emery Aff. at ¶ 13.

5) Twilio does not provide this information in the ordinary course of business.  Twilio is a
communications platform API, not a record retention API.  Twilio is not a consulting
service, so Twilio does not have a platform with retained data, reporting or other
documentation.  Twilio does not use historic data in its ordinary course of business.
Consequently, Twilio does not have tools to obtain access to such information.  Emery Aff.
at ¶ 14.

6) Because this is not information Twilio would provide in the ordinary course of business,
Twilio's customers would have no expectation that Twilio could provide the information as
requested by plaintiff.  If a customer requested this information, Twilio would instruct the
customer to write its own query, using its own software developers, at its own cost.  Emery
Aff. at ¶ 17.

7) Requiring Twilio to provide additional information would impose an undue burden in two
different respects.  First, Twilio would have to deploy engineering resources to write code to
develop information to provide additional information.  Twilio estimates that it would take
an additional 30 hours of engineering time to develop queries to create responsive
information.  Emery Aff. at ¶ 15.  Second, Twilio does not have the engineering bandwidth
to respond to the broader set of requests.  Its engineers are fully engaged with regular
business projects.  To satisfy plaintiffs' demands, Twilio would have to hire new engineering
staff, or divert resources from its business operations.  Emery Aff. at ¶ 16.

8) Before requiring a third party to incur the burden of creating access to information that
Twilio does not use in the ordinary course, the court should require plaintiff to seek
responsive information from defendants who can access the requested information or give
plaintiffs direct access.  A Twilio customer could obtain access to the underlying data with
little effort.  A user can log into its Twilio account or use the Twilio API to run a query to
obtain the records, avoiding the size limitation by limiting the queries by time ranges.
Plaintiff could request user access to defendant's account from defendant.  Plaintiff or
defendant could then develop software queries to produce the records without any additional
burden on Twilio. However, Twilio does not have the authority to give plaintiff access to
defendant's user credentials, or access to defendant's account.  Defendant could easily create

The Honorable Jacqueline Scott Corley
Page 6

add an additional user on its account if the defendant so desired. The information about how to do that is available on Twilio's FAQs. Emery Aff. at ¶ 18. Defendants have quick and direct access to the data that Twilio does not because of how its systems are configured. The court should require plaintiff to exhaust its pursuit of additional information from defendants before imposing additional burdens on a third party to create code to access the additional information plaintiff seeks.

9)  Plaintiff has not attempted to obtain relevant information through less expensive or less burdensome means. When asked during meet and confer whether plaintiff's counsel had requested the user credentials of defendants, counsel refused to answer the question. When asked whether plaintiff's counsel had attempted to access the user's account using the user's credentials, counsel refused to answer the question. Given defendants are parties to the litigation, plaintiff should at least be required to attempt to access the information through a less expensive and less onerous means than to require a third party to write code creating queries to access information that may or may not be relevant to the dispute.

10) The court should consider the remote relevance of the requested information. Plaintiffs claimed that they needed to know how many messages were transmitted and the numbers of the recipients of those messages to demonstrate ascertainability and numerosity. Twilio has produced the relevant information plaintiffs claimed they needed for class certification. The transmittal records Twilio produced identify the recipients of the messages and the number of messages transmitted.

11) The additional information plaintiffs seek is beyond the scope of their earlier requests. Plaintiffs now seek information related to the content of the text messages that were transmitted, claiming they need to review the contents of every text, and the identities of the carriers who terminated each particular call. First, Twilio cannot readily access that information. Second, plaintiffs have not suggested that these issues are even in dispute. Plaintiffs allege that defendants had a uniform practice of transmitting unsolicited messages to the putative class. There is no suggestion that defendants have asserted any differentiation in their messaging, or otherwise challenged plaintiffs' contention. Presumably, if defendants were to make that assertion, they would have to produce evidence to support it. No evidence or argument has been introduced to suggest that this is the case. As to the identity of the carrier, plaintiffs have not offered any explanation as to the relevance of that information.

12) The court should impose sanctions. Twilio met and conferred, and agreed to a compromise to avoid the legal expense of responding to an overbroad subpoena, and a motion to compel. Twilio agreed to produce information responsive to a narrowed scope of subpoena based on its capabilities, its understanding of the issues in controversy, and the court's encouragement to resolve the dispute. Plaintiff moved to compel even though Twilio advised that it had produced all the information that it had agreed to provide, that Twilio would have to write code to access additional information, and that providing the information would be time consuming and expensive. Despite that, plaintiff moved to compel anyway. Plaintiff has required Twilio to bear substantial additional expense to respond to a motion to compel that is overreaching by seeking to impose burdens on a non-party without any good faith basis. Accordingly, the court should impose sanctions. *Legal Voice v. Stormans Inc.,* 738 F.3d 1178, 1185 (9th Cir. 2013) ("A court may, however, impose sanctions when a party issues a

The Honorable Jacqueline Scott Corley
Page 7

subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law."). Twilio submits that the court should award attorneys' fees and costs associated with the meet and confer process and responding to this motion based on a lodestar of hours expended and the regular hourly billing rate of Twilio's counsel.

## PLAINTIFFS' REPLY OF MAY 6, 2015

Uncontroverted evidence establishes that Plaintiffs served Twilio with a subpoena on February 12, 2015. *See* Dkt. #2-5 at 2; *cf.* Dkt. #5, pp. 2:12 – 3:6. Twilio offered no timely objections. *See* Dkt. #2, p. 2 ¶ 10; *cf.* Fed.R.Civ.P. 45(d)(2)(B) (requiring objections no later than "14 days after the subpoena is served"). Thus, Twilio waived its objections. *See Scruggs v. Vance*, No. 2:06-CV-0633 KJM KJN, 2011 WL 6368297, at *11 (E.D. Cal. Dec. 19, 2011) ("Generally, failure to serve timely objections waives all grounds for objection."). In this context, after the hearing on the Court's order to show cause why Twilio should not be held in contempt, the Court ruled, "As stated on the record, the parties are ordered to meet and confer in person regarding Twilio's compliance with the subpoena." Dkt. #9 at 2. The Court rightly put the emphasis on Twilio's compliance because it was too late for Twilio to raise new objections. Nevertheless, Twilio raises new objections in its letter brief response by which it attempts to resist production of documents required by the subpoena and by Twilio's subsequent agreement. Plaintiffs respectfully ask the Court to ignore these very late objections and, instead, focus on the evidence which substantiates Twilio's failure to produce required discovery without good cause. *See Martinez*, 2012 WL 699462, at *3 (to avoid contempt, a person "must show that [it] took every reasonable step to comply with the subpoena and to articulate reasons why compliance was not possible.").

## A.    Twilio's Response Establishes its Intent to Defraud Plaintiffs of Discovery

Twilio does not dispute that it agreed on Monday, April 20, to produce (a) all transmission records from Defendants' accounts and (b) a copy of Defendants' customer profiles (including account information, services provided, *et cetera*). *See Aff. Kirby*, Ex. 1 at p. 2. Twilio does not dispute that Plaintiffs made clear that these production categories included an expansive array of documents and data. *See id.*, ¶ 6. Plaintiffs consistently have sought all such documents and data with their subpoena and application to enforce it. *See* Dkt. #2-4 at 9-10, Requests #1 – #6; *cf.* Dkt. #1. However, prior to agreeing to produce all of these documents and data, Twilio admits that it decided that it would not comply fully with these requests. *See Twilio's Response*, ¶ 1 ("Twilio never intended to produce every datum of information"); *cf. Aff. Emery*, ¶¶ 3-5, 7, 13. But Twilio failed to bring these objections and their reasons to Plaintiffs' attention. Instead, Twilio agreed to produce all of the requested documents and data without disclosing Twilio's limitations. *See Aff. Kirby*, Ex. 1 at p. 2. Twilio then falsely stated that it had complied fully with these requests. *See id.*, Ex. 3 at p. 10. Thus, Twilio tried to defraud Plaintiffs of discovery.

Discovery is not a game. Rule 45 does not permit Twilio to present objections after pretending it had none. *See Scruggs*, 2011 WL 6368297, at *11 (Rule 45 "require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'"), *quoting In re DG Acquisition Corp.,* 151 F.3d 75, 81 (2d Cir. 1998). And Rule 45 does not permit Twilio to trick Plaintiffs into accepting less discovery than they are due. *See* Fed.R.Civ.P. 45. Twilio's objections should be rejected and it should be compelled to honor its agreement to produce **all** transmission records and **all** of Defendants' customer profile documents (including account information, services provided, *et cetera*).

The Honorable Jacqueline Scott Corley
Page 8

**B.      Twilio's Response Confirms that it is Withholding Defendants' Account Data**

Twilio argues that it has no reason to impede Plaintiffs. This is false. Plaintiffs stated repeatedly
that one purpose of the subpoena is to help determine if Twilio is responsible for sending illegal
text messages. *See* Dkt. #1 at 4:17-19; Dkt. #5 at 4:24-26. Indeed, Plaintiffs allege the existence
of unnamed defendants. *See* Dkt. #2-1, ¶ 9. Other discovery indicates that Twilio may be
responsible. *See* Dkt. #6-1, pp. 5-6 (Defendants' statement that Twilio facilitated transmissions
of the text messages at issue). Thus, Twilio has ample reason to obstruct Plaintiffs.

Twilio promised to provide a copy of Defendants' customer profiles (including account
information, services provided, *et cetera*). This is exactly the type of data that could help
determine if Twilio shares in Defendants' responsibility for sending illegal text messages. Yet,
Twilio offers no excuse for failing to produce all account information associated with the
V Theater account. *See, e.g., Aff. Kirby*, ¶ 7. Also, Twilio for the first time reveals in its response
that there is a second account for which it has provided no data. *Aff. Emery*, ¶ 6. There is no
valid reason for Twilio to withhold any information from either account. Therefore, Plaintiffs
respectfully request that Twilio be compelled to produce **all** of Defendants' account data.

**C.      Twilio's Response Confirms that it is Withholding Requested Transmission Records**

Twilio promised to produce all transmission records. Twilio now refuses. But each of the
records could make it easier to certify and represent the putative class. Contents of text messages
would make it easier to determine which text messages were sent to class members. Since it is a
TCPA violation to send text messages "to any telephone number assigned to a … cellular
telephone service" (*see* 47 U.S.C. § 227(b)(1)(A)(iii)), Twilio's details of delivery and receipt by
cellular telephone carriers would help identity and quantify class members with TCPA claims.
Even Defendants stipulate, "Materials sought by Plaintiffs [in these proceedings] may assist the
Parties to reach a settlement or otherwise resolve the case." *See Aff. Kirby*, Ex. 8 at ¶ 4.

Plaintiffs respectfully request that Twilio be ordered to produce **all** transmission records.
Compelling Twilio to search its electronic data is proper with production requests. *See, e.g., In
re CV Therapeutics, Inc. Sec. Litig.*, C03-3709EMC, 2006 WL 2458720, *2 (N.D.Cal. Aug. 22,
2006) ("Employment of search terms is a reasonable means of narrowing the production….");
*Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (noting that electronic
evidence is frequently cheaper and easier to produce than paper evidence because it can be
searched automatically). Twilio demonstrated the ease of these data searches by retrieving the
contents of all text messages received by Defendants' account. *See Aff. Kirby*, Ex. 5. Even if
Twilio had not agreed to undertake these searches, the time and expense of complying with these
production requests would not be reasons to deny them. *See Jackson v. Montgomery Ward &
Co., Inc.*, 173 F.R.D. 524, 529 (D.Nev. 1997). ("[J]ust because complying with a discovery
request will involve expense or may be time consuming does not make it unduly burdensome.").

**D.      Twilio's Request for Sanctions is Frivolous**

Plaintiffs simply seek data requested by a lawful subpoena and promised by Twilio. Twilio's
gamesmanship caused avoidable expenses and twice caused the Nevada District Court to delay
case deadlines. *See* Dkt. #6-2; *Aff. Kirby*, Ex. 8. It is not the Plaintiffs who deserve sanctions.

The Honorable Jacqueline Scott Corley
Page 9


*/s/ Patrick S. Thompson*
Patrick S. Thompson (SBN 160804)
*pthompson@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Telephone: (415) 733-6000
Facsimile: (415) 677-9041


Attorney for non-party Twilio, Inc.

*/s/ Albert H. Kirby*
Albert H. Kirby (SBN 204266)
*ahkirby@soundjustice.com*
**SOUND JUSTICE LAW GROUP, PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 489-3210
Facsimile: (866) 845-6302


Attorney for Plaintiff Jeremy Bauman